**UNITED STATES COURT OF APPEALS FOR THE SECOND CIRCUIT**

**Thurgood Marshall U.S. Courthouse   40 Foley Square, New York, NY 10007 Telephone: 212-857-8500**

**MOTION INFORMATION STATEMENT**

Docket Number(s): 18-2390 _____    _____ Caption [use short title] _____

Motion for: Attorneys' Fees and Costs Under the

Equal Access to Justice Act

_____

_____

Set forth below precise, complete statement of relief sought:

On September 23, 2020 this Court issued a decision                  **Bloom v. Azar**

reversing the District Court's dismissal of two of Dr.

Bloom's three claims and remanding the case to the District

Court for further Proceedings.  Dr. Bloom seeks an

EAJA award as the prevailing party after incurring

substantial fees.

MOVING PARTY: Jonathan D. Bloom _____    OPPOSING PARTY: Alex Azar, U.S. Dept. of Health and Human Services

[✓] Plaintiff          [ ] Defendant

[ ] Appellant/Petitioner   [ ] Appellee/Respondent

MOVING ATTORNEY: Alexandrea L. Nelson, Esq. _____    OPPOSING ATTORNEY: Melissa A.D. Ranaldo, AUSA _____

[name of attorney, with firm, address, phone number and e-mail]

Parrish Law Offices, 224 Lexington Drive              United States Attorney's Office for the District of Vermont

Menlo Park, CA 94025; (650) 400-0043;                3rd Floor, 11 Elmwood Avenue, Burlington, VT 05401;

james@dparrishlaw.com                                (802) 951-6725; melissa.ranaldo@usdoj.gov

Court- Judge/ Agency appealed from: United States District Court, District of Vermont; Judge Geoffrey W. Crawford

**Please check appropriate boxes:**                      **FOR EMERGENCY MOTIONS, MOTIONS FOR STAYS AND INJUCTIONS PENDING APPEAL:**

Has movant notified opposing counsel (required by Local Rule 27.1):     Has this request for relief been made below?   [ ] Yes [✓] No
[✓] Yes   [ ] No (explain): _____                     Has this relief been previously sought in this court?  [ ] Yes [✓] No
_____                                     Requested return date and explanation of emergency: _____

Opposing counsel's position on motion:                                   _____
[ ] Unopposed [✓] Opposed [ ] Don't Know                                 _____
Does opposing counsel intend to file a response:                         _____
[✓] Yes   [ ] No   [ ] Don't Know                                        _____

Is oral argument on motion requested?   [ ] Yes [✓] No (requests for oral argument will not necessarily be granted)

Has argument date of appeal been set?   [✓] Yes [ ] No  If yes, enter date: October 7, 2019

**Signature of Moving Attorney:**

/s/ Alexandrea L. Nelson _____   Date: 11/30/2020 _____   Service by: [✓] CM/ECF   [ ] Other [Attach proof of service]

Form T-1080 (rev.12-13)

# 18-2390

## UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

JONATHAN D. BLOOM,

Plaintiff – Appellant

v.

ALEX AZAR,

United States Department of Health and Human Services,

Defendant – Appellee

## PLAINTIFF/APPELLANT'S MOTION FOR ATTORNEYS' FEES AND COSTS UNDER THE EQUAL ACCESS TO JUSTICE ACT

Appellant, Dr. Jonathan Bloom, files this motion for attorneys' fees and costs under the Equal Access to Justice Act (EAJA) (28 U.S.C. § 2412(d) or (b)). On September 23, 2020, this Court issued a decision reversing the District Court's dismissal of two of Dr. Bloom's three claims and remanding this case to the District Court for further proceedings. Dr. Bloom was the "prevailing party" in this action and, *inter alia*, the Secretary's position was not "substantially justified."

Accordingly, an EAJA award is appropriate and Dr. Bloom seeks an award of $338,399 incurred during more than four and a half years of litigation (so far), including an appeal to this Court.

## I.    FACTUAL BACKGROUND

### A.    Substantive Proceedings Below

As recounted in this Court's decision, Dr. Bloom is a Type I diabetic, who also suffers from "brittle" diabetes with hypoglycemic unawareness.  Prior to being prescribed a continuous glucose monitor (CGM), Dr. Bloom had several incidents where his glucose levels were so low that Dr. Bloom fell into a diabetic coma and he had to be revived.  Dr. Bloom has had no further incidents since he began using a CGM.

Dr. Bloom has sought Medicare coverage for his CGM supplies at least thirteen times resulting in thirteen administrative law judge (ALJ) decisions.  On three of those occasions, Dr. Bloom's request for coverage was denied on the grounds that a CGM is not "primarily and customarily used to serve a medical purpose" and, therefore, not covered "durable medical equipment."  Thereafter, Dr. Bloom filed suit in the United States District Court for the District of Vermont seeking reversal of the Secretary's denial of all three rejected claims.

On January 29, 2018, the District Court granted, in part, Dr. Bloom's motion for summary judgment that a CGM was covered "durable medical equipment",

rejected the Secretary's position that a CGM was not "primarily and customarily used to serve a medical purpose", and reversed the Secretary's denial of Medicare coverage for one of three claims related to Dr. Bloom's CGM. *See* Dist. Ct. Dkt. #50. Simultaneously, the Court dismissed two of Dr. Bloom's CGM claims based on lack of jurisdiction for not meeting the amount in controversy, if considered individually, and held that Dr. Bloom could not "aggregate" his claims at the district court to meet the amount in controversy. Dr. Bloom moved to alter or amend the judgment (*see* Dist. Ct. Dkt. #52) believing that the partial dismissal was erroneous and the District Court denied that motion on May 15, 2018. Dist. Ct. Dkt. #62. Thereafter, on August 13, 2018, Dr. Bloom filed an appeal with this Court. Dist. Ct. Dkt. #75.

## B.     Proceedings Regarding Fees Under EAJA

In parallel with those proceedings, Dr. Bloom moved for his attorneys' fees under the EAJA on March 1, 2018. *See* Dist. Ct. Dkt. #53. While that motion was pending, numerous notices of subsequent authority and responses were filed. *See* Dist. Ct. #60, 61, 63-66, 78, and 79. Further, in August 2018, the Secretary requested yet more briefing to conduct a "line-by-line" analysis of the bills. Dist. Ct. Dkt. #78. Dr. Bloom opposed that request noting that all the bills had been placed before the Court in March and that an application for attorneys' fees "should not result in a

3

second major litigation." Dist. Ct. Dkt. #79, 3 (*citing Commissioner, I.N.S. v. Jean*, 496 U.S. 154, 163 (1990)).

Thereafter, on January 16, 2019, the District Court granted, in part, Dr. Bloom's motion. *See* Dist. Ct. Dkt. #80. In particular, the District Court found, *inter alia*, that: 1) Dr. Bloom was eligible for an EAJA award; 2) Dr. Bloom was the "prevailing party"; 3) no special circumstances existed that would make an EAJA award unjust; 4) the Secretary's position was not "substantially justified"; 5) Dr. Bloom was entitled to an EAJA award; 6) a cost of living adjustment (COLA) was appropriate; and 7) a partial "special factor" rate enhancement was appropriate.[1] Nevertheless, the District Court did not decide the actual amount of fees.

The District Court noted that "degree of success" was a factor in determining the amount of fees to be awarded and that Dr. Bloom had not been completely successful because two of his claims had been dismissed on lack of jurisdiction grounds. Noting the Secretary's request for yet another round of briefing, the District Court ordered additional briefing, with the Secretary required to file an

---

[1] At the time of the District Court's decision on CGM coverage, two other district courts had rejected the Secretary's position that a CGM is not "primarily and customarily used to serve a medical purpose" and subsequently awarded fees. *See Whitcomb v. Hargan*, Case No. 17-cv-14 (E.D. Wisc. June 12, 2018) and *Lewis v. Azar*, 308 F. Supp. 3d 574 (D. Mass. 2018). While this matter has been pending, yet another court has rejected the Secretary's position. *See Zieroth v. Azar*, 2020 WL 5642614 (N.D. Cal. Sept. 22, 2020). Fees remain under consideration in *Zieroth*.

additional brief on fees and Dr. Bloom be given an opportunity to reply. *See* Dist. Ct. Dkt. #80 at 18.

In light of the pending appeal, the parties jointly moved the District Court to stay further briefing until this Court ruled and the degree of success was known. The District Court granted that motion on February 4, 2019. *See* Dist. Ct. Dkt. #85.

## C.    This Court's Decision

Briefing at the Second Circuit was completed, oral argument was held in October 2019, and this Court issued its decision on September 23, 2020. *See* Dkt. #114. This Court concluded that the District Court had jurisdiction over all three claims because, in determining the amount in controversy, all the claims of a single plaintiff are aggregated. Thus, the position urged by Dr. Bloom was adopted and the decision dismissing two of Dr. Bloom's claims was reversed.

The time for filing a petition for rehearing, rehearing *en banc*, or for a *writ certiorari* by the Supreme Court having passed, the mandate from this Court issued on November 16, 2020. *See* Dkt. #123.

## II.    LEGAL BACKGROUND

The EAJA (28 U.S.C. § 2412(d)(1)(A)) provides:

> Except as otherwise specifically provided by statute, a court shall award to a prevailing party other than the United States fees and other expenses, in addition to any costs awarded pursuant to subsection (a), incurred by that party in any civil action (other than cases sounding in tort), including proceedings for judicial review of agency action, brought by or against the United States

in any court having jurisdiction of that action, unless the court finds that the position of the United States was substantially justified or that special circumstances make an award unjust.

"The EAJA was enacted to decrease the chance that 'certain individuals … may be deterred from seeking review of, or defending against unreasonable governmental action because of the expense involved in securing the vindication of their rights.'" *See*, *e.g.*, *Green v. Bowen*, 877 F.2d 204, 206 (2d Cir. 1989). A parallel objective of EAJA is to deter the government from litigating unreasonable positions by forcing the government to bear the cost of the resulting attorneys' fees. *See*, *e.g.*, *Ardestani v. I.N.S.*, 502 U.S. 129, 138 (1991). As noted in one committee report that led to the passage of the EAJA, the EAJA:

> rests on the premise that a party who chooses to litigate an issue against the Government is not only representing his or her own vested interest but is also refining and formulating public policy. An adjudication or civil action provides a concrete, adversarial test of Government regulation and thereby insures the legitimacy and fairness of the law.

*See Ibrahim v. U.S Department of Homeland Security*, 912 F.3d 1147, 1178 (9th Cir. 2019) (quoting H.Rept. 96-1418 at 10 (1980)).

Under the statute (paragraph (d)), eligibility for a fee award requires: 1) that the claimant is the "prevailing party"; 2) that the Government's position was not substantially justified; and 3) that no "special circumstances" make a fee award unjust. *See*, *e.g.*, *Gomez-Beleno v. Holder*, 644 F.3d 139, 144 (2d Cir. 2011). As defined in the statute, the "position of the United States" includes not only the

position advanced in the litigation, but also the acts or omissions by an agency giving rise to the litigation.  28 U.S.C. § 2412(d)(2)(D).

A party is the "prevailing party" if he has been "awarded some relief by the court" that amounts to a court-ordered "change in the legal relationship between the parties."  *See Buckhannon Board and Care Home Inc. v. West Virginia Dept. of Health and Human Resources*, 532 U.S. 598, 603-04 (2001).

After the movant shows that it was the "prevailing party", the government bears the burden of showing that its position was substantially justified. "Substantially justified" means "justified to a degree that could satisfy a reasonable person."  *See Pierce v. Underwood*, 487 U.S. 552, 565 (1988).  To make that showing, the government must make a "strong showing" that its position has "a reasonable basis both in law and fact."  *Id*.  "[T]he Government's prelitigation conduct or its litigation position could be sufficiently unreasonable by itself to render the entire Government position not 'substantially justified.'"  *See United States v. $19,000 in U.S. Currency*, 95 F.3d 248, 252 (2d Cir. 1996).  Decisions in other cases, although not dispositive, may also shed light on the lack of justification for the government's position.  "[A] string of losses can be indicative."  *Pierce*, 487 U.S. at 566.

Under the statute, a prevailing party may obtain compensation for all aspects of the litigation, including fees incurred in litigating the fee petition.  *See*, *e.g.*, *I.N.S.*

*v. Jean*, 496 U.S. 154, 162, 163 n.10 (1990).  In determining the amount of a fee, the court should determine the number of hours reasonably expended in the litigation multiplied by a reasonable hourly rate.  *See*, *e.g.*, *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983).  As explained in *Hensley*:

> Where a plaintiff has obtained excellent results, his attorney should recover a fully compensatory fee.  Normally, this will encompass all hours reasonably expended in the litigation, and indeed in some cases of exceptional success an enhanced award may be justified.  …  The result is what matters.

*Id.* at 435 (internal citations omitted).

As this Court has noted in other cases, appeal related EAJA applications should, in the first instance be filed with this Court, which may then refer the matter to the District Court.  *See*, *e.g.*, *Dague v. City of Burlington*, 976 F.2d 801, 804 (2d Cir. 1991).  Consistent with that practice, Dr. Bloom files this EAJA petition with the understanding that the matter may be referred to the District Court.

An EAJA fee petition under paragraph (d) must include: 1) a showing that the applicant is the "prevailing party"; 2) a showing that the applicant is eligible to receive an award; 3) an itemized statement containing time expended and rates charged; and 4) an allegation that the position of the United States was not substantially justified.  *Scarborough v. Principi*, 541 U.S. 401, 408 (2004).

### III.     DISCUSSION

Dr. Bloom tracks the requirements of *Scarborough*:

### A.     Dr. Bloom Is the "Prevailing Party"

In the present case, clearly, Dr. Bloom was the "prevailing party." Dr. Bloom has been successful on every single one of his claims and was even victorious overturning dismissal of two of his claims on lack of jurisdiction grounds on appeal.

Indeed, prior to his victory on appeal, the District Court had already found that Dr. Bloom was the "prevailing party."

### B.     Dr. Bloom Is Eligible To Receive an EAJA Award

EAJA fee awards are available to private litigants with a net worth not exceeding $2,000,000. 28 U.S.C. § 2412(d)(2)(B)(i). Dr. Bloom is submitting a declaration to verify his status. *See* Exhibit A. Dr. Bloom's net worth has never exceeded $2,000,000.

### C.     Itemized Statement[2]

In this litigation, Dr. Bloom was represented by Sheehey Furlong & Behm P.C. (Craig Nolan, Justin Brown, and Alexandrea Nelson) acting as local and appellate counsel, the Parrish Law Offices (Debra Parrish, James Pistorino, and Bridget Noonan) acting as lead and appellate counsel, and Richard Stanley (acting

---

[2] When the fees' related briefing is completed, Dr. Bloom will update the figures provided herein to reflect those additional expenses.

as consulting appellate counsel). With the exception of Ms. Nelson and Mr. Brown, each of these attorneys has over 20 years' experience handling complex litigation matters in federal courts. Ms. Nelson and Mr. Brown are former clerks of this Court and their assistance was invaluable in securing a positive outcome for Dr. Bloom.

An itemized statement of the time expended, rates charged, and expenses is attached as Exhibit B.

Fees and expenses in this matter fall into two main categories: 1) fees and expenses incurred through the date of the District Court's EAJA decision; and 2) fees and expenses incurred thereafter, principally related to the appeal. Broken down, the totals (rounded to the nearest dollar) are:

| | District Court | | Appeal | | Total | |
|---|---|---|---|---|---|---|
| | **Hours** | **Charges** | **Hours** | **Charges** | **Hours** | **Charges** |
| Craig Nolan | 26.1 | $8,598 | 16.7 | $5,877 | 42.8 | $14,475 |
| Alexandrea Nelson | | | 99.9 | $19,481 | 99.9 | $19,481 |
| Justin Brown | 8.8 | $1,980 | | | 8.8 | $1,980 |
| Paralegals (SFB) | 6.2 | $775 | 35.6 | $4,450 | 41.8 | $5,225 |
| Debra Parrish | 102.1 | $52,312 | 41.2 | $22,735 | 143.3 | $75,047 |
| James Pistorino | 113.2 | $56,034 | 151.8 | $79,054 | 265.0 | $135,088 |
| Bridget Noonan | 29.5 | $5,939 | 3.7 | $1,283 | 33.2 | $6,678 |

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| Richard Stanley | | | 48.0 | $28,800 | 48.0 | $28,800 |
| Total | 285.9 | $125,638 | 396.9 | $161,680 | 682.8 | $286,774 |
| Expenses (SFB) | | $855 | | $1,044 | | $1,899 |
| Expenses (Parrish Law Office) | | $1,534 | | $6,399 | | $7,933 |
| Total Expenses | | $2,389 | | $7,443 | | $9,832 |

These fees and expenses are the direct result of the Secretary's unreasonable denials, necessitating litigation of this matter, despite numerous prior decisions against the Secretary and in favor of Dr. Bloom. The fees listed above are based on the attorneys' usual and customary rates.

## D. The Secretary's Position Was Not "Substantially Justified"

At base, all that is needed to decide this issue is the fact that for more than six years the Secretary has denied CGM coverage of the claims at issue in this case on the grounds that a CGM is not "primarily and customarily used for a medical purpose." That position is so at odds with reality that it is hard to understand how anyone could ever have held that belief.

A timeline of the various courts and other entities that have addressed the issue may be helpful.[3]

---

[3] The Secretary's denial of CGM claims on the grounds that a CGM is not "primarily and customarily used to serve a medical purpose" is the subject of two other, ongoing, litigations. *See Olsen v. Azar*, Case No. 20-cv-374 (E.D. Wash.); *Lewis v. Azar*, Case No. 18-cv-2929 (D.D.C.).

| Date | District Court and Other Activity |
|---|---|
| April 29, 2016 | H.H.S. Civil Remedies Division holds that the Secretary's position does not pass the "reasonableness standard." *See* DAB No. CR4596 (2016).  2016 WL 2851236. |
| May 19, 2016 | *Finigan* court calls Secretary's position "head scratching." *Finigan v. Burwell*, 189 F. Supp. 3d 201, 207 n.6 (D. Mass. 2016). |
| October 26, 2017 | *Whitcomb* court calls Secretary's position "unreasonable", "arbitrary and capricious." *Whitcomb v. Hargan*, Case No. 17-cv-14, Dkt. #19 at 12, 14 (E.D. Wisc. Oct. 26, 2017). |
| January 29, 2018 | *Bloom* court: "no evidence supports the MAC's conclusion that a CGM is not 'primarily and customarily used to serve a medical purpose.'" *Bloom v. Azar*, No. 5:16-cv-121, 2018 WL 583111 at *10 (D. Vermont, Jan. 29, 2018). |
| April 5, 2018 | *Lewis* court: "The Food and Drug Administration, the National Institutes of Health and multiple professional medical societies such as the American Diabetes Association and the American Medical Association deem CGM primarily and customarily to serve a medical purpose as a medical device.", "The Council's decision that CGM devices are not primarily and customarily used to serve a medical purpose constituted legal error and was not supported by substantial evidence." *Lewis v. Azar*, 308 F. Supp. 3d 574, 578-79 (D. Mass. 2018). |
| June 12, 2018 | *Whitcomb* court: "no reasonable basis for arguing that continuous glucose monitors are not primarily and customarily used to serve a medical purpose"; "demonstrates the unreasonableness of the Secretary's position."; fees awarded.  *Whitcomb v. Azar*, Case No. 17-cv-14, Dkt. #34 at 4, 6 (E.D. Wisc. June 12, 2018). |
| June 15, 2018 | By this date, more than 40 ALJs had rejected the Secretary's position more than 55 times.  *See* |

| | https://dparrishlaw.com/parrish-law-offices-wins-significant-victory-for-cgm-users/ |
|---|---|
| January 16, 2019 | *Bloom* court: "no reasonable person would be satisfied by the Secretary's position that CGMs are not primarily and customarily used to serve a medical purpose."; fees awarded (precise amount not decided). *Bloom v. Azar*, Case No. 16-cv-121, 2019 WL 10852757, at *6 (D. Vermont, Jan. 16, 2019). |
| March 30, 2019 | *Lewis* court: "breadth of decisions contrary to the Secretary's position demonstrates a 'string of losses'"; fees awarded. *Lewis v. Azar*, 370 F. Supp. 3d 267, 273 (D. Mass. 2019). |
| September 22, 2020 | *Zieroth* court: "the Secretary's interpretation … is not reasonable"; "the medical purpose for which the [CGM] is used is clearly and, and rather dramatically, evidenced in the instant case." *Zieroth v. Azar*, No. 20-cv-0172, 2020 WL 5642614 at *4 (N.D. Cal. Sept. 22, 2020). |

Thus, the Secretary's position has been uniformly rejected by every court or entity to consider it. This is the very definition of a "string of losses" indicative that a position lacks "substantial justification", just as the *Lewis* court found. *See Pierce*, 487 U.S. at 569.

The Secretary cannot meet his burden of showing that his position had substantial justification.

**E.    There Are No "Special Circumstances"**

There are no "special circumstances" that would make an EAJA award unjust. As set forth, the District Court in this case already found that there are no "special circumstances" that would make a fee award unjust.

13

**F.     A Fee Award Furthers the Purposes of EAJA**

As detailed above, the EAJA has two complementary purposes: 1) to prevent the expense of litigation from discouraging parties from challenging unreasonable government action or inaction; and 2) to deter the government from litigating unreasonable positions.  Both of those purposes would be served by a fee award in this case.

First, if Dr. Bloom were forced to bear the expense of a multi-year litigation, that would vastly outweigh the amounts at issue ($1,976, $473, and $1,419).  Thus, the sheer burden of the litigation would preclude any economically rational actor from challenging the government's unreasonable conduct in this case.  Accordingly, an award would be consistent with the very purpose of EAJA.

Second, an award would further the deterrence purpose of EAJA.  As detailed above, the Secretary was not deterred by:

1) at least 40 ALJs telling the Secretary his position was not well founded;

2) multiple ALJs telling the Secretary his position was not well founded with respect to Dr. Bloom, specifically;

3) another District Court describing the Secretary's position as "head scratching";

4) the Secretary's own Civil Remedies Division telling the Secretary his position was not well founded; and

5) yet another District Court finding the Secretary's position arbitrary and capricious.

14

All of that had happened *before* the District Court's decision in this case. Incredibly, even the District Court's decision with respect to Dr. Bloom's entitlement to CGM coverage did not deter the Secretary from continuing to issue the same unreasonable denials to *Dr. Bloom*. *See* Exhibit C. In short, the Secretary is impervious to negative authority and reason.

Indeed, after the District Court decision in this case as to both CGM coverage and attorneys' fees, the Secretary has continued to deny CGM claims on the same grounds, and yet another Court (*Zieroth*) rejected the Secretary's position.

An EAJA award may serve the purpose of deterring the Secretary from continuing to advance this unreasonable position; that is one purpose of EAJA.[4]

## G. The Actual Amount of Fees and Expenses Requested

Fees under EAJA may be determined in a variety of ways (with somewhat differing evidentiary bases). For simplicity's sake, Dr. Bloom presents his base request before turning to other ways in which fees may be awarded.

### 1. Dr. Bloom Achieved "Exceptional Success" and an "Enhanced" Fee Award is Appropriate

In *Hensley*, the Supreme Court instructed that in cases of "exceptional success" an "enhanced" fee award (over even the fees reasonably incurred) may be

---

[4] On October 30, 2020, the Secretary published his intention to continue denying CGM claims on the same grounds at least until April 1, 2021, while he considers his position and solicits public comment.

appropriate. 461 U.S. at 435. This is just such a case. Nevertheless, Dr. Bloom seeks only a fee award that makes counsel whole for the time and expenses incurred, as well as a lump sum commensurate with the interest thereon measured from two critical dates in the litigation. That is, the "enhancement" Dr. Bloom seeks to simply compensate the attorneys involved at their usual billing rates with interest thereon. This totals some $338,399, including interest and expenses.

With regard to Dr. Bloom's three claims for CGM coverage, as a result of this Court's decision, Dr. Bloom, has been victorious on each and the relief sought in the Complaint filed in April 2016 has been achieved.

While achieving coverage of Dr. Bloom's CGM claims was important, Dr. Bloom's victory on the jurisdictional issue was truly exceptional and has important ramifications for Medicare beneficiaries. In particular, Dr. Bloom resisted the Secretary's motion for summary judgment of lack of jurisdiction. *See* Dist. Ct. Dkt. #35 (filed in September 2017). When the District Court ruled against Dr. Bloom on jurisdiction, Dr. Bloom believed the decision to be in error and filed a motion to alter or amend the judgment. Dist. Ct. Dkt. #52. When that was denied, Dr. Bloom appealed to this Court, where he filed more than 50 pages of briefing before attending oral argument in October 2019. This Court issued its decision in Dr. Bloom's favor in September 2020, bringing an end to Dr. Bloom's three-year battle on this issue.

The decision of this Court was the first by any appellate court in the country on the jurisdictional issue and resulted in the reversal to the first District Court to address the issue as well.  Dr. Bloom's efforts resulted in a decision from this Court that directly preserved the right to full judicial review for the 4.4 million Medicare beneficiaries that live within this Circuit.[5]  As a result of Dr. Bloom's perseverance and success, those beneficiaries have retained their rights to seek judicial review, without the additional hurdles sought to be imposed by the Secretary.

Further, this Court's decision resulted in the reversal of the District Court's decision that the Secretary sought to use to deny Medicare beneficiaries judicial review in other cases.  In particular, *Lewis v. Azar*, Case No. 18-cv-2929 (D.D.C.) (Walton, J.), is a class action litigation seeking to certify a class of more than 90,000 persons whose claims for CGM coverage were denied on the same grounds as Dr. Bloom's.  Relying on the now reversed District Court's decision in this case, the Secretary moved to dismiss one of the named plaintiffs because his claims, considered individually, did not meet the amount in controversy requirement.  *Id*. at Dkt. #22 at 6-7.  If that same theory were applied to all the proposed class members, plaintiffs estimated that more than 9,300 proposed class members would be denied

---

[5] Based on numbers reported by the Kaiser Family Foundation for 2018.  *See* https://www.kff.org/medicare/state-indicator/total-medicare-beneficiaries/?currentTimeframe=0&sortModel=%7B%22colId%22:%22Location%22,%22sort%22:%22asc%22%7D. *

judicial review. While not binding on the District Court in D.C., this Court's decision is certainly persuasive authority and this Court's reversal of the District Court removes the primary basis of the Secretary's effort there.

A four and a half year litigation (so far) that results in total victory on every single non-fees issue, involves a three year struggle related to jurisdiction including an appeal of an adverse decision, that results in the establishment of new law and the direct protection of the litigation rights of more than 4.4 million Medicare beneficiaries is "exceptional success" by any standard.

As a portion of the "enhanced" fee award, Dr. Bloom seeks a lump sum of $41,793. This is commensurate with 10% simple interest calculated from January 16, 2019, the date the District Court determined that Dr. Bloom was entitled to attorneys' fees for work performed at the District Court level ($23,471) as well as $18,321 for fees incurred in the appeal calculated from October 7, 2019, the date of oral argument on the appeal. Unless included as a factor, in effect, the Secretary will have imposed costs of hundreds of thousands of dollars on Dr. Bloom and also imposed the interest of those costs on Dr. Bloom that currently accrue at $2,500/month (assuming 10% simple interest). Further, unless included as a factor, there will be no impact on the Secretary from continued delay in this case while Dr. Bloom continues to bear expense at the rate of $2,500/month. That is not appropriate

18

when this litigation started with the Secretary's refusal to pay, *e.g.*, $473, for Dr. Bloom's CGM supplies some six and a half years ago.

If the Court chooses to award fees on this basis, the Court should simply award the total amount of $338,399 and no further analysis is necessary.

### 2.     Other Bases for Awarding/Adjusting Fees

If the Court chooses not to award fees under the "exceptional success" standard, then there are several additional factors to consider. Pursuant to 28 U.S.C. § 2412(d)(2)(A), attorneys fees in excess of $125/hour may be awarded if the court determines that an increase in the cost of living or some other special factor justifies the higher rate. *See*, *e.g*., *Gomez-Beleno*, 644 F.3d at 146-47.

### a)     Cost of Living Adjustment

The Consumer Price Index is used to calculate the proper cost of living adjustment to the statutory rate. *See*, *e.g.*, *Harris v. Sullivan*, 968 F.2d 263, 264-65 (2d Cir. 1992). The CPI-U for the Northeastern Region in October 2020 (273.37) divided by the same for March 1996 when the statutory rate was enacted (162.8) gives a multiplier factor of 1.68. The statutory rate ($125/hour) multiplied by this factor results in an adjusted rate of $210/hour.

Applying this factor to the billed hours gives a total of $139,835 ($134,610 attorneys' fees plus $5,225 paralegal fees) plus expenses of $9,832 for a total charge of $149,667.

### b) "Special Factor" Adjustment

In addition to COLA, the EAJA rate may be enhanced using the "special factor" provision in 28 U.S.C. §2412(d)(2)(A)(ii) based on a showing that the case requires "an identifiable practice specialty not easily acquired by a reasonably competent attorney." *Sprinkle v. Colvin*, at 426 (citing *Raines v. Shalala*, 44 F.3d 1355, 1361 (7th Cir. 1995)). "We think it refers to attorneys having some distinctive knowledge or specialized skill needful for the litigation in question—as opposed to an extraordinary level of the general lawyerly knowledge and ability useful in all litigation." *Pierce*, 487 U.S. at 572.

Ms. Parrish's specialized knowledge and experience was required to competently represent Dr. Bloom (and CGM users more generally). Only someone with a technical/biology background would be able to understand the differences between the various CGM devices, finger sticks and how they work, and diabetic conditions to both put forth Dr. Bloom's arguments/claims and to rebut the Secretary's. In addition, a detailed knowledge of the Medicare appeals process was/is required. Ms. Parrish brought that specialized background and knowledge to bear in successfully representing Dr. Bloom.

One aspect of that specialized knowledge is Ms. Parrish's and the Parrish Law Offices' unique knowledge of the state of CGM litigation before the Department. ALJ decisions are not generally publicly available. Thus, it was only because of the

20

Parrish Law Offices' position that information about the number of ALJs who had ruled that CGMs qualified as DME was available.

Special expertise in Medicare law by attorneys from a Medicare advocacy organization was enough to convince the district court in *Connecticut State Dept. of Social Services v. Thompson*, 289 F. Supp. 198, 204-05 (D. Conn. 2003). The case was reversed on the merits which ended the entitlement to fees so there was no criticism of the expertise issue. *Connecticut State Dept. of Social Services v. Thompson*, 428 F.3d 138 (2d Cir. 2005). A tax attorney who was a former IRS Special Agent met the test in *U.S. v. Scheingold*, 293 F. Supp. 2d 447, 452 (D.N.J. 2003). Attorney Parrish's background would satisfy both of these courts.

Below, the District Court found that "special factor" adjustment was appropriate for Ms. Parrish (and, therefore, that her usual and customary rates would apply) but declined to find the same with respect to the other attorneys involved. *See* Dkt. #80 at 15. Respectfully, Dr. Bloom asserts that is in error. As lead counsel, Ms. Parrish was responsible for overseeing and guiding the work of all the attorneys on this case and Ms. Parrish also argued Dr. Bloom's successful motion for summary judgment. Given that all of the work in this case was dependent on Ms. Parrish' (and the Parrish Law Offices') expertise and specialized knowledge, if Ms. Parrish qualifies for "special factor" billing, then all of the work on this case also qualifies.

That, with her supervision and guidance, Ms. Parrish utilized the services of attorneys that have lower rates than hers, demonstrates Ms. Parrish' good judgment and efforts to keep costs down, rather than that any attorney could have handled the task. To date, counsel for Dr. Bloom has not located a single case where "special factor" adjustment was applied on an attorney-by-attorney basis. Accordingly, if the Court chooses to examine this issue, "special factor" adjustment should be applied to all the bills in this case and fees awarded using the attorneys usual and customary rates.

Some explanation of the roles of the various attorneys may assist the Court in evaluating the requested fees and is attached as Exhibit D along with CVs of each of the attorneys.

Accordingly, if the Court chooses to examine this factor, Dr. Bloom believes that each of the attorney's usual and customary billing rates should be applied. Thus, the total fees and expenses would be $296,606.

## IV.     CONCLUSION

For the reasons set forth above, Dr Bloom should be awarded his reasonable attorneys' fees and expenses (plus an amount to account for interest thereon) in the amount of $338,399. Alternatively, the Court should award fees adjusted to reflect a COLA and "special factor" enhancement.

Dated: November 30, 2020        Respectfully submitted,

**JONATHAN A. BLOOM**

By:    */s/ Debra M. Parrish*
Debra M. Parrish, Esq.
PARRISH LAW OFFICES
788 Washington Road
Pittsburgh, PA 15228
debbie@dparrishlaw.com

By:    */s/ James Pistorino*
James Pistorino, Esq.
PARRISH LAW OFFICES
224 Lexington Drive
Menlo Park, CA 94025
James@dparrishlaw.com

By:    */s/ Alexandrea L. Nelson*
Alexandrea L. Nelson, Esq.
SHEEHEY FURLONG & BEHM P.C.
30 Main Street, 6th Floor
P.O. Box 66
Burlington, VT 05402-0066
(802) 864-9891
anelson@sheeheyvt.com

23

## CERTIFICATE OF COMPLIANCE

Counsel for Dr. Bloom hereby certifies that the foregoing brief complies with the type-volume limitation set forth in Fed. R. App. P. 27(d)(2)(A).  Based on the word count tool in Microsoft Word, the number of words in the foregoing brief, excluding the sections excludable under Fed. R. App. P. 32(f), is 5,012.

Dated:  November 30, 2020                    Respectfully submitted,

**JONATHAN A. BLOOM**

By:    */s/ Alexandrea L. Nelson*
          Alexandrea L. Nelson, Esq.
          SHEEHEY FURLONG & BEHM P.C.
          30 Main Street, 6th Floor
          P.O. Box 66
          Burlington, VT  05402-0066
          (802) 864-9891
          anelson@sheeheyvt.com

24